**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **HUDSON INSURANCE CO.,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Case No. PWG-15-283** |
| **THE CFP GROUP, INC.,** *et al.*, | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND JUDGMENT

In this action for breach of a contract of indemnity, Plaintiff Hudson Insurance Co. ("Hudson") has filed a Motion for Default Judgment and Memorandum in Support as to the two remaining Defendants, the CFP Group, Inc. ("CFP"), and Roberto J. Clark.  ECF Nos. 31, 31-1. Defendants were properly served with the Complaint, but did not answer or otherwise defend. Taking the well-pleaded factual allegations as true and considering the affidavit and exhibits filed with Hudson's Motion, I find that Hudson has established Defendants' liability for breach of contract, as well as the amount of damages Plaintiff incurred for losses, consultant fees, and legal expenses under the indemnity agreement.  Accordingly, I will grant Hudson's Motion and close this case.

Specifically, I find that "CFP, as principal and corporate indemnitor, and Roberto . . . Clark, as individual indemnitor[], executed a general agreement of indemnity (the 'Indemnity Agreement') in favor of Hudson."  Compl. ¶ 10, ECF No. 1.[1]  In it, Defendants agreed "to

---

[1] Although the purported signature of Sujata Clark also appeared on the Indemnity Agreement and Hudson originally named Sujata Clark (now known as Sujata Chopra) as a Defendant, Chopra "asserted that her allegedly notarized signature on the Indemnity Agreement was a forgery and that she never signed it," and Hudson dropped its claims against Chopra after

exonerate and indemnify Hudson and to hold it harmless from and against all demands, liabilities, losses, costs, damages, attorneys' fees and expenses . . . that Hudson might sustain or incur as a result of issuing bonds on behalf of CFP." *Id.* ¶ 11.  Hudson then issued project payment bonds and performance bonds "securing CFP's performance of construction contracts." *Id.* ¶ 12.

With regard to a construction project that CFP contracted to complete for the United States (through the General Services Administration ("GSA")), Hudson issued two bonds, each in the penal sum of $1,048,114.00.  *Id.* ¶ 14.  When CFP failed to perform on that project, Hudson received a completion demand from GSA and completed the remaining work, incurring losses, consultant fees, and legal expenses of $190,454.12 under the project payment bond and losses of $517,869.08 under the performance bond for payments to subcontractors and suppliers, as well as consulting fees and expenses.  *Id.* ¶¶ 16–18, 26–27.  GSA compensated Hudson $209,468.06 for the project, resulting in a net loss of $498,855.14 as of the date of the Complaint. *Id.* ¶ 28.

With regard to a second construction project that CFP contracted to complete for the United States (this time through the National Park Service ("NPS")), Hudson also issued a project payment bond and a performance bond, each in the penal sum of $307,623.93.  *Id.* ¶ 30. When CFP failed to perform on that project, Hudson received a completion demand from NPS and completed the remaining work, incurring losses, consultant fees, and legal expenses of $105,248.46 under the project payment bond and losses of $78,846.00 under the performance bond for payments to subcontractors, as well as consulting fees and expenses.  *Id.* ¶¶ 32–34, 39–

---

deposing the notary who purportedly witnessed the signature.  Pl.'s Mot. ¶¶ 30–31; *see* ECF Nos. 27, 28.

40.  NPS compensated Hudson $43,997.71 for the project, resulting in a net loss of $140,096.75 as of the date of the Complaint. *Id.* ¶ 41.

Hudson's combined losses resulting from CFP's failure to perform on these two projects was $638,951.89 at the time it filed suit.  Compl. ¶ 51.  Hudson filed suit against Defendants and former Defendant Sujata Clark (now Sujata Chopra) on January 30, 2015, claiming that, in breach of the Indemnity Agreement, Defendants have refused to "cure their defaults and reimburse Hudson for its damages." *Id.* ¶ 47.  Chopra was served on April 2, 2015 and filed an answer.  ECF Nos. 5, 7.  CFP and Clark were properly served with the Complaint on May 4, 2015.  ECF Nos. 9 & 10.  Their responses to the Complaint were due to be filed on or before May 26, 2015, but they did not answer or otherwise defend.  CFP's default was entered by the Clerk of the Court on July 8, 2015, ECF No. 18, and Clark's default was entered by the Clerk of the Court on July 29, 2015, ECF No. 20. Hudson dismissed its claim against Chopra and filed a Motion for Default Judgment as to the two remaining Defendants in this case, CFP and Roberto Clark.  ECF No. 31.  Given that Defendants failed to defend, Hudson's well-pleaded factual allegations summarized above are taken as true, and I find that Hudson has established Defendants' liability for breach of the Indemnity Agreement.  *See Ryan v. Homecomings Fin. Network,* 253 F.3d 778, 780 (4th Cir. 2001).

As for damages, in its Motion for Default Judgment and Memorandum in Support, Hudson seeks damages of $845,949.15,[2] "plus costs of this action and prejudgment interest."

---

[2] Plaintiff asserts in its Motion and Paragraphs 37 and 38 of its Memorandum that its total damages are $844,270.77.  Pl.'s Mot 1; Pl.'s Mem. ¶¶ 37, 37.  But, in its Summary of Losses, Pl.'s Mem. Ex. F, ECF No. 31-9, Hudson identifies losses totaling $638,617.07 on the first project and $207,332.08 on the second project, for a total of $845,949.15.  And, in Paragraph 37, Plaintiff states: "As set forth more fully herein, Hudson's net total losses on the [first] Project are $638,617.07 and on the [second] Project are $207,332.08, for a total combined net loss of $844,270.77."   This is a mathematical error;  $638,617.07 + $207,332.08 = $845,949.15.

Pl.'s Mot. 1; *see* Pl.'s Mem. 8. It attaches spreadsheets detailing its losses and attorneys' fees, including those incurred since it filed suit on January 30, 2015. *See* Pl.'s Mem. Ex. B, C, D, E, F, ECF Nos. 31-3 – 31-9. Hudson notes that "there remains $33,815.32 in unpaid contract balances due from GSA to Hudson on [the first] Project, after payment of outstanding consultant costs," and "$16,813.70 in unpaid contract balances due from NPS to Hudson on the [second] Project, after accounting for subcontractor payments due." Pl.'s Mem. ¶ 12 n.5, ¶ 21 n.9. Hudson offers that, "[i]n the event that Hudson receives payment of any portion of those contract balances, Hudson will reduce any judgment against the Defaulting Defendants by the amount of such payment(s)." *Id.* ¶ 12 n.5, ¶ 21 n.9.

Notably, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). This rule prevents "fundamental[] unfair[ness]" by enabling "the defending party . . . to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action." Wright & Miller, Federal Practice and Procedure § 2663; *see also In re Genesys Data Techs., Inc.,* 204 F.3d 124, 132 (4th Cir. 2000) ("When a complaint demands a specific amount of damages, courts have generally held that a default judgment cannot award additional damages. The rationale is that a default judgment cannot be greater than the specific amount sought because the defendant could not reasonably have expected that his damages would exceed that amount." (citations omitted)).

Here, in its Complaint, Hudson only sought damages of "$638,951.89, or such amount as may be determined to be owed to Hudson at a trial in this matter, plus court costs, interest, [and]

---

Plaintiff identifies the correct amount, $845,949.15, in the conclusion of its Memorandum, Pl.'s Mem. 8, and in its Proposed Order, ECF No. 31-10, as well as in its supporting affidavit from counsel, ECF No. 31-4.

attorney's fees." Compl. 9. Yet, it also alleged that it would "incur additional losses, costs and expenses to complete [the two projects for the United States] and [to] resolve any additional payment bond claims," and that it "continues to investigate other claims against various bonds that it issued on behalf of CFP as those claims arise." *Id.* ¶¶ 42, 46. And, it noted that the bonds for one project were each "in the penal sum of $1,048,114.00," and the bonds for the other project were each "in the penal sum of $307,623.93." *Id.* ¶¶ 14, 30. Thus, the Complaint put Defendants on notice that Hudson could be obligated to pay up to $1,048,114.00 on each of two bonds and $307,623.93 on each of two additional bonds, or more than $2.6 million, as a result of Defendants' breach, and that, during the pendency of this litigation, Hudson would continue to incur losses and fees in excess of the $638,951.89 it already had incurred. *See id.* ¶¶ 14, 30, 42, 46. Additionally, I find that the attorneys' fees Hudson incurred are reasonable. Therefore, I find that Hudson is entitled to damages of $845,949.15, plus costs of this action and prejudgment interest.[3] Should Hudson receive additional compensation from GSA or NPS, Hudson will notify the Court within fourteen days, and the judgment will be amended and reduced accordingly.

Based on the foregoing findings and pursuant to Fed. R. Civ. P. 55(b), it is hereby ORDERED that

    1. Plaintiff's Motion, ECF No. 31, IS GRANTED;

---

[3] The Indemnity Agreement provided that Defendants "agree[d] to pay to Surety upon demand . . . [a]ll loss, costs and expenses . . . including, but not limited to: *court costs and the cost of services rendered by attorneys*" and "agree[d] to pay to Surety *interest* on all disbursements made by Surety in connection with such loss, costs and expenses incurred by Surety at the maximum rate permitted by law, calculated from the date of each disbursement." Indem. Agr. 1–2, Pl.'s Mem. Ex. A, ECF No. 31-2 (emphasis added).

2. Judgment IS ENTERED in favor of Hudson and against Defendants CFP and Roberto Clark, jointly and severally, in the amount of $845,949.15, plus costs of this action and prejudgment interest;

3. Should Hudson receive additional compensation from GSA or NPS, Hudson will notify the Court within fourteen days, and the judgment will be amended and reduced accordingly; and

4. The Clerk IS DIRECTED to CLOSE THIS CASE.


Date: <u>March 7, 2017</u>                                    _____/S/_____

                                                             Paul W. Grimm
                                                             United States District Judge